Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800

United States District Court
Southern District of New York                                           1:20-cv-05385

| | |
|---|---|
| Chandra Weintz, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Pacific Foods of Oregon, LLC, | |
| Defendant | |

Plaintiff by attorneys allege upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1. Pacific Foods of Oregon, LLC ("defendant") manufactures, distributes, markets, labels and sells hemp beverages purporting to be flavored only with vanilla under the Pacific Foods brand ("Product").

2. The Product is available to consumers from retail and online stores of third-parties and is sold in cartons of 32 OZ (946 ML).

3. The relevant front label representations include "Pacific Foods," "Hemp," "Plant-Based Beverage," "Vanilla," hemp seeds and several cured vanilla beans.

1



4.  The unqualified, prominent and conspicuous representation of the Product's flavor as "Vanilla" is false, deceptive and misleading because the Product contains non-vanilla, artificial flavors which imitate, resemble and extend vanilla's taste but are not derived from vanilla beans, yet these flavors are not disclosed to consumers on the front label as required and expected.

5. The tropical orchid of the genus Vanilla (*V. planifolia*) is the source of the flavor commonly known as vanilla.

6. Vanilla's "desirable flavor attributes…make it one of the most common ingredients used in the global marketplace, whether as a primary flavor, as a component of another flavor, or for its desirable aroma qualities."[1]

7. Vanilla's unique flavor cannot be duplicated by science due to over 200 compounds scientists have identified, including volatile constituents such as "acids, ethers, alcohols, acetals, heterocyclics, phenolics, hydrocarbons, esters and carbonyls."[2]

8. Demand for real vanilla "has been steadily increasing…due to consumer demand for natural foods that are free of artificial ingredients."[3]

9. According to Nielsen, 62% of consumers say they try to avoid artificial flavors.[4]

10. Another study by New Hope Network concludes that "71% of consumers today are avoiding artificial flavors."[5]

11. Label Insight determined that 76% of consumers avoid products with artificial flavors.[6]

12. According to one seller of vanilla, today's consumers "want real vanilla, not imitation [vanilla] flavoring."

13. Unfortunately, consumers are often misled when it comes to vanilla, due to its high

---

[1] Daphna Havkin-Frenkel, F.C. Bellanger, Eds., Handbook of Vanilla Science and Technology, Wiley, 2018; Kristiana Lalou Queen of flavors: Vanilla rises above transparency concerns to lead category, Food Ingredients First, Sept. 3, 2019 (describing vanilla as "versatile").
[2] Arun K. Sinha et al., "A comprehensive review on vanilla flavor: extraction, isolation and quantification of vanillin and other constituents," International Journal of Food Sciences and Nutrition 59.4 (2008): 299-326.
[3] Chagrin Valley Soap & Salve Company, FAQs, Why Are The Prices of Vanilla Bean Products Always Increasing?
[4] Nielsen, Reaching For Real Ingredients: Avoiding The Artificial, Sept. 6, 2016.
[5] Alex Smolokoff, Natural color and flavor trends in food and beverage, Natural Products Insider, Oct. 11, 2019.
[6] Thea Bourianne, Exploring today's top ingredient trends and how they fit into our health-conscious world, March 26-28, 2018.

cost and sophisticated methods of deception.

14. During the first half of the 20th century, "the widespread and exceedingly serious adulteration of vanilla extracts that are now labeled 'pure'" was rampant, which resulted in consumers expecting vanilla but receiving its synthetic replacement, vanillin:[7]

> Misbranding was alleged for the further reason that the product was labeled and branded so as to deceive and mislead the purchaser thereof, in that said label was calculated and intended to create the impression and belief in the mind of the purchaser that the product was a genuine vanilla extract, whereas, in fact, it was a mixture of vanilla extract, vanillin, and coumarin, artificially colored with caramel.
>
> Notice of Judgment No. 2241, Adulteration and Misbranding of…Vanilla Extract, United States Department of Agriculture, W. M. Hays, Acting Secretary, Washington, D.C., January 23, 1913.

15. Due to widespread fraud, vanilla became the only flavor to have a standard of identity, to "insure, for the protection of both the consumers and our industry, that all vanilla products are correctly labeled and meet at least minimum standards."[8] *See* 21 C.F.R. § 169.175 – 21 C.F.R. § 169.182 (vanilla products); *see also* 1 NYCRR § 250.1(a)(17) ("the commissioner hereby adopts the following as the standards of identity…as published in…21 CFR part 169").[9]

16. One of the most important ways for consumers to know whether they are buying real or imitation vanilla is through truthful and non-misleading disclosure of a product's ingredients.

17. Designating vanilla flavors requires application of the standards for vanilla products different rules compared to non-vanilla flavors. *See* 21 C.F.R. § 169.175-182 (vanilla products)

---

[7] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960; Memorandum of Telephone Conversation between Mr. Alfred Daibock, Commercial Policy Division, Department of State and Tom Bellis, Food Standards Branch, FDA (the FDA stated, "The prime purpose sought to be served by the standards adopted was to promote honest, fair dealing with housewives and other consumers of the flavorings covered by the standards").
[8] Letter from McCormick & Company Inc. to HEW Secretary, January 15, 1960; Press Release U.S. Department of Health, Education, and Welfare, September 13, 1963.
[9] 1 NYCRR § 250.1(a)(17), Section 250.1, Foods, Part 250, Definitions and Standards, Subchapter C, Food and Food Products, Chapter VI, Food Control, Title 1; 1. New York State has adopted and incorporated in its entirety, all provisions of the Federal Food, Drug and Cosmetic Act ("FFDCA") through its Agriculture and Markets Law ("AGM") and the accompanying regulations. See Title 1, Department of Agriculture and Markets, Official Compilation of Codes, Rules and Regulations of the State of New York ("NYCRR").

4

*compare with* 21 C.F.R. § 101.22(i).

18. The ingredient listings will vary based on the product's primary characterizing flavor and the amount and type of flavor used.

19. First, if a food is flavored only by vanilla, the ingredient list is required to "bear[s] the name of the food specified in the definition and standard." *See* 21 U.S.C. §343(g) and 21 C.F.R. § 101.4(a)(1) ("designation of ingredients" by common or usual name); *see also* 21 C.F.R. § 169.175 (b)(1) ("The specified name of the food is 'Vanilla extract' or 'Extract of vanilla'"); 21 C.F.R. § 169.177 (b) ("The specified name of the food is 'Vanilla flavoring'.").

20. Second, if vanillin is added to vanilla, the ingredient is required to state "'contains vanillin, an artificial flavor (or flavoring).'" *See* 21 C.F.R. § 169.180(b) ("Vanilla-vanillin extract").

21. Third, where vanilla contains added vanillin and/or non-vanilla natural flavors that promote a vanilla taste, it is required to be listed as "vanilla-vanillin extract and _____ ," the blank being filled with the names of the particular flavors.

22. For all other situations where a product's primary characterizing flavor is not vanilla, flavors are listed as "'natural flavor' or 'artificial flavor.'"[10] *See* 21 C.F.R. § 101.22(h)(1) ("The label of a food to which flavor is added shall declare the flavor in the statement of ingredients…as 'spice', "'natural flavor', or 'artificial flavor.'"); *see also* 21 U.S.C. § 343(i) (non-standardized flavors "may be designated as spices, flavorings, and colorings without naming each.").

23. The Product's front label of "Vanilla" without qualification gives reasonable consumers the impression that only vanilla ingredients provide its taste. *See* 21 C.F.R. § 101.22(i)(1) ("If the food contains no artificial flavor which simulates, resembles or reinforces the

---

[10] Donna Berry, Playing the natural flavor game, Food Business News, Jan. 1, 2018.

characterizing flavor, the name of the food on the principal display panel or panels of the label shall be accompanied by the common or usual name of the characterizing flavor, e.g., 'vanilla'").

24.  However, the Product contains non-vanilla flavors, indicated on the ingredient list as "Natural Vanilla Flavor With Other Natural Flavors."

> **INGREDIENTS:** WATER, BROWN RICE SYRUP, HULLED HEMP SEED, CONTAINS 1% OR LESS OF: DISODIUM PHOSPHATE, NATURAL VANILLA FLAVOR WITH OTHER NATURAL FLAVORS, TRICALCIUM PHOSPHATE, VITAMIN D2, XANTHAN GUM‡.

**INGREDIENTS**: WATER, BROWN RICE SYRUP, HULLED HEMP SEED, CONTAINS 1% OR LESS OF: DISODIUM PHOSPHATE, NATURAL VANILLA FLAVOR WITH OTHER NATURAL FLAVORS, RIBOFLAVIN (B2), TRICALCIUM PHOSPHATE, VITAMIN A PALMITATE, VITAMIN B12, VITAMIN D2, XANTHAN GUM.

25.  These "other natural [non-vanilla] flavors" are not disclosed on the front label, even though they enhance, resemble, simulate, reinforce and extend the "complex array of flavor notes and aromas" of vanilla by providing, among other things, creamy, sweet and vanilla-like notes.[11]

26.  For non-vanilla flavors, use of some flavor from the named source supplemented by flavor from natural sources other than the named flavor requires a food to be labeled "With Other Natural Flavor" (WONF). *See* 21 C.F.R. § 101.22(i)(1)(iii).[12]

27.  In contrast to non-standardized flavors, the addition of non-vanilla flavors to vanilla which enhance a vanilla taste are required to be declared as artificial flavors. *See* Memorandum of Conference, Status of Vanilla Flavoring with other Natural Flavors, July 8, 1966 ("The vanilla standard determines vanilla as a standardized product. If other flavorings are added, then the

---

[11] Vanilla, Taste Foundations, Virginia Dare Company.
[12] Hallagan and Drake, FEMA GRAS and U.S. Regulatory Authority: U.S. Flavor and Food Labeling Implications, Perfumer & Flavorist, Oct. 25, 2018; Charles Zapsalis et al., *Food chemistry and nutritional biochemistry*. Wiley, 1985, p. 611 (describing the flavor industry's goal to develop vanilla compound flavors "[T]hat *Seem*[s] to be Authentic or at Least Derived from a Natural Source") (emphasis added).

vanilla is no longer a standardized product and should therefore be labeled artificial or imitation.").

28. Vanilla WONF is increasingly used in place of vanilla extract[13] due to record high vanilla prices.[14]

29. Vanilla WONF can supposedly "provide the same vanilla taste expectation while requiring a smaller quantity of vanilla beans," or *less vanilla* than if only vanilla beans were used.[15]

30. The Vanilla WONF used in the Product contains vanilla extract but also contains one or more added flavors which may include vanillin, maltol and/or piperonal.

31. According to representatives of FEMA, the flavor industry trade group:

The standards for vanilla extract and the other standardized vanilla products at 21 CFR 169 expressly do not provide WONF designation. This means that a flavoring mixture of vanilla extract and vanillin produced through a "natural" process (i.e. a process consistent with the definition of natural flavor at 21 CFR Section 101.22(a)(3)) cannot be described as "vanilla extract WONF," "vanilla WONF" or other similar descriptive terms.

"Labeling Vanilla Flavorings and Vanilla-Flavored Foods in the U.S.," John B. Hallagan and Joanna Drake, The Flavor and Extract Manufacturers Association of the United States, Perfumer & Flavorist, Vol. 43 at p. 46, Apr. 25, 2018.

32. The Product's non-vanilla flavors – its artificial flavors – are not disclosed on the front label or the ingredient list, which is deceptive, misleading and in violation of law.

33. A reasonable consumer cannot follow up or learn the truth that the Product contains non-vanilla, artificial flavors from reading the Product's ingredient list because defendant labels the flavor ingredient as "Natural Vanilla Flavor With Other Natural Flavors."

34. Reasonable consumers, observing the Product's absence of qualifying front label terms, will expect the Product to only be flavored by vanilla ingredients.

35. Defendant's branding and packaging of the Product is designed to – and does –

---

[13] Or vanilla flavoring.
[14] Uliana Pavlova, Vanilla Morphs From Plain to Premium as Prices Refuse to Go Down, Bloomberg, July 27, 2018.
[15] Donna Berry, Understanding the limitations of natural flavors, BakingBusiness.com, Jan. 16, 2018.

deceive, mislead, and defraud plaintiff and consumers.

36. Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers like plaintiff.

37. The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

38. Had plaintiff and class members known the truth, they would not have bought the Product or would have paid less for them.

39. As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $4.79 for cartons of 32 OZ (946 ML), excluding tax, compared to other similar products represented in a non-misleading way.

## Jurisdiction and Venue

40. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

41. Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

42. Upon information and belief, the amount in controversy exceeds the threshold because defendant sells significant quantities of the Product throughout this state.

43. Plaintiff Chandra Weintz is a citizen of New York.

44. Defendant Pacific Foods of Oregon, LLC is an Oregon limited liability company with a principal place of business in Tualatin, Clackamas County, Oregon and upon information and belief, at least one member of defendant is not a citizen of New York.

45. "Minimal diversity" exists because plaintiff and defendant are citizens of different states.

46. Venue is proper in this judicial district because a substantial part of the events or omissions giving rise to the claim occurred in this district, *viz*, the purchase of the Product by plaintiff and the misleading representations relied upon by plaintiff.

47. This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to supply and supplies goods within New York.

## Parties

48. Plaintiff Chandra Weintz is a citizen of New York, New York County, New York.

49. Defendant Pacific Foods of Oregon, LLC is a Oregon limited liability company with a principal place of business in Tualatin, Oregon, Clackamas County.

50. Defendant sells the Product in grocery and health food stores, and through online platforms, throughout the United States.

51. Defendant sells the Product through its website and Amazon.com.

52. During the relevant statutes of limitations, plaintiff purchased the Product within her districts and/or State for personal consumption and/or use in reliance on the representations the Product's vanilla taste was only provided by vanilla.

53. Plaintiff purchased the Product from locations including Amazon.com during 2019 and/or 2020, among other occasions.

54. Plaintiff cannot be assured the Product's labeling in the future will be accurate even though she would like to purchase the Product provided its label and/or components are changed so they are no longer misleading.

Class Allegations

55. The class will consist of all purchasers of the Product who reside in New York during the applicable statutes of limitations.

56. Plaintiff will seek class-wide injunctive relief based on Rule 23(b) in addition to monetary relief class.

57. Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

58. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

59. Plaintiff is an adequate representative because her interests do not conflict with other members.

60. No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

61. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

62. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

63. Plaintiff seeks class-wide injunctive relief because the practices continue.

New York General Business Law ("GBL"), §§ 349 & 350
(Consumer Protection Statutes)

64. Plaintiff incorporates by reference all preceding paragraphs.

65. Plaintiff and class members desired to purchase and consume products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

66. Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

67. Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

68. The amount and proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because consumers are willing to pay more for such Products.

69. Plaintiff relied on the statements, omissions and representations of defendant, and defendant knew or should have known the falsity of same.

70. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Negligent Misrepresentation

71. Plaintiff incorporates by reference all preceding paragraphs.

72. Defendant misrepresented the substantive, quality, compositional, organoleptic and/or nutritional attributes of the Product.

73. The amount and proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because consumers are willing to pay more for such Products.

74. Defendant had a duty to disclose and/or provide non-deceptive marketing of the Product and knew or should have known same were false or misleading.

75. This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product type.

76. The representations took advantage of consumers' cognitive shortcuts made at the

point-of-sale and their trust in defendant, a well-known and respected brand or entity in this sector.

77. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Product.

78. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.

79. Plaintiff incorporates by reference all preceding paragraphs.

80. The Product was manufactured, labeled and sold by defendant and warranted to plaintiff and class members that they possessed substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

81. The amount and proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because consumers are willing to pay more for such Products.

82. The amount and proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because consumers are willing to pay more for such Products.

83. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

84. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

85. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

86. Defendant received notice and should have been aware of these misrepresentations due to numerous complaints by consumers to its main office over the past several years regarding the Product.

87. The Product did not conform to its affirmations of fact and promises due to defendant's actions and were not merchantable.

88. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Fraud

89. Plaintiff incorporates by reference all preceding paragraphs.

90. The amount and proportion of the characterizing component, vanilla, has a material bearing on price or consumer acceptance of the Products because consumers are willing to pay more for such Products.

91. Defendant's fraudulent intent is evinced by its failure to accurately identify the Product on the front label and ingredient list, when it knew its statements were neither true nor accurate and misled consumers.

92. Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

## Unjust Enrichment

93. Plaintiff incorporates by reference all preceding paragraphs.

94. Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

    **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying plaintiff as representative and the undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the applicable laws;

4. Awarding monetary damages and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   July 13, 2020

                                                      Respectfully submitted,

                                                      Sheehan & Associates, P.C.
                                                      /s/Spencer Sheehan
                                                      Spencer Sheehan
                                                      505 Northern Blvd Ste 311
                                                      Great Neck NY 11021-5101
                                                      Tel: (516) 303-0552
                                                      Fax: (516) 234-7800
                                                      *spencer@spencersheehan.com*
                                                      E.D.N.Y. # SS-8533
                                                      S.D.N.Y. # SS-2056

1:20-cv-05385
United States District Court
Southern District of New York

Chandra Weintz, individually and on behalf of all others similarly situated,

           Plaintiff,

 - against -

Pacific Foods of Oregon, LLC,

           Defendant

## Class Action Complaint

```
Sheehan & Associates, P.C.
505 Northern Blvd Ste 311
  Great Neck NY 11021-5101
     Tel: (516) 303-0552
     Fax: (516) 234-7800
```

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated: July 13, 2020

                       /s/ Spencer Sheehan
                       Spencer Sheehan